The People of the State of Illinois ex rel. John S. Rusch, Defendant in Error, v. Joseph DeGiulio and Daniel Leopold, Plaintiffs in Error.

Gen. No. 37,433.

Opinion filed February 1, 1935.

ELLIODOR M. LIBONATI, of Chicago, for plaintiffs in error; JOHN M. LONERGAN, of Chicago, of counsel.

THOMAS J. COURTNEY, State's Attorney, for defendant in error; JOHN F. CASHEN, JR., of Chicago, of counsel.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

John S. Rusch, chief clerk of the board of election commissioners, filed a petition in the county court of Cook county against Joseph DeGiulio, Bill Marzano and Daniel Leopold, alleging that November 4, 1930, a general election was held in Chicago at which various candidates of different political parties were voted upon; that respondents served as judges of election at that election in the first precinct of the 26th ward; "that certain misconduct and misbehavior, which is hereinafter alleged of the said respondents as such judges of said election at and during said election, constitute a criminal offense or criminal offenses against the People of the State of Illinois and also

constitute contempt or contempts'' of said court; and that respondents, while so serving, fraudulently and unlawfully made a false canvass and return of the votes cast in that precinct at said election and were guilty of corrupt and fraudulent conduct and practice in their duty as judges of said election. The petition prayed that a rule be entered upon respondents to show cause why they should not be held in contempt of court and such a rule was entered.

The respondents DeGiulio and Leopold served as Republican judges and the respondent Marzano as Democratic judge. Marzano was not apprehended.

On hearing the evidence in open court DeGiulio and Leopold were found guilty of ''knowingly, fraudulently and unlawfully making a false canvass and return of the votes cast in said precinct at said election'' and ''of misconduct and misbehavior as an officer of the county court of Cook County.'' DeGiulio was sentenced to the county jail for a period of six months and Leopold for a period of four months. This writ of error was sued out by both respondents.

Respondents' sole contention is that the evidence is insufficient to sustain the finding and judgment of the county court.

The instant proceeding was predicated upon the canvass and return of the votes cast for Stanley H. Kunz, Democrat, and Peter C. Granata, Republican, who were candidates for member of Congress of the United States from the district which comprised the precinct in question in the election heretofore referred to.

It was stipulated on the hearing that the poll books, tally sheets and ballot boxes returned by respondents and the other precinct election officials be received in evidence and that the ballots contained in the ballot box be recounted in open court. The recount showed that 384 votes were cast in the precinct, that Kunz received 141 votes, that Granata received 207 votes,

that 32 ballots were not voted for any candidate for the particular office, that two ballots were not initialed by any of the judges of election of the precinct and therefore void, and that there were two spoiled ballots.

Both respondents admit that 121 straight Democratic votes were cast in the precinct and 109 straight Republican votes. DeGiulio admitted that at the conclusion of the canvass and tally of the votes for this office the tally sheets of both clerks showed 121 votes recorded for Kunz on "straight" tickets and 5 votes on "split" tickets for an extended total of 126 votes, and 109 votes recorded for Granata on "straight" tickets and sufficient additional "split" tickets to make an extended total of 247 votes. DeGiulio testified that he then proceeded to check over all of the tallies and recorded figures of the clerks for possible mistakes, and, recognizing what he then considered an error in the Kunz-Granata count on the tally sheets of both clerks, that he scratched out the straight and total votes for both candidates as then recorded and substituted for the figures 121 in the Kunz straight vote column the figures 73, and in his total vote column for the figures 126 the figures 78; and that he substituted for the figures 109 in the Granata straight vote column the figures 157, and in his total vote column for the figures 247 the figures 297. The official return made by the respondents and other election officials of this precinct to the board of election commissioners was Kunz 78 votes and Granata 297 votes.

Leopold's testimony was characterized by an almost complete failure to recollect anything that occurred while the votes were being called from the ballots, tallied and recorded. The following, however, was testified to by him on direct examination:

"Q. You heard Mr. DeGiulio testify about the change he made?

"A. Yes, sir.

"Q. Was that in your opinion the proper change to make when he made it, as far as you knew?

"A. Well, being on the board the first time, I made Joe (DeGiulio) take care of whatever mistakes there were.

"Q. Do you have any recollection of a mistake being corrected at that time?

"A. I do.

"Q. But you don't know what the nature of the correction was?

"A. No, sir."

Elizabeth Ruggio, one of the clerks of election, called as a witness, when asked if the tally sheets were changed by anyone and if she knew about the erasures on the Kunz and Granata counts, testified: "Joe De-Giulio called my attention to an error I had made. I remember very well, after everything had closed, that he made a mistake and he was sorry he hadn't got— now, I don't know which mistake he referred to at that time. . . . Well, they were erasures made by Mr. DeGiulio. He called my attention to an error, I don't know if it was one error or ten errors. He knew so much about ballots and things that he was always lending a helping hand, and we were sure he would be doing the right thing."

A few weeks after the election when this precinct was reached on the official canvass by the board of election commissioners, the erasures and substitution of figures were obvious, as was the fact that Kunz was credited with only 73 straight votes when there were 121 straight Democratic votes cast in the precinct, and Granata was credited with 157 straight votes when only 109 Republican straight votes were cast.

Judge Jarecki, presiding over the board conducting the canvass, summoned respondents and the other judge and clerks of this precinct to appear before the board of election commissioners to explain the era-

sures and discrepancies in the votes of the candidates as shown on the tally sheets. DeGiulio testified on that occasion that he had make a mistake and that the figures "should have been corrected, which I did not do." On DeGiulio's statement that his recollection of the correct vote cast in the precinct was 121 straight votes and five split votes for Kunz, and 109 straight votes and 138 split votes for Granata, the board of election commissioners changed the official record of the return of the votes for this office from this precinct to 126 for Kunz and 247 votes for Granata.

The return by the judges and clerks of this precinct of 78 votes for Kunz and 297 votes for Granata, or a combined vote of 375, was only nine votes less than the total vote cast in the precinct. As heretofore shown there were 36 ballots cast that could not be counted for this office. It is therefore demonstrated to a mathematical certainty that not only were 65 votes taken from Kunz and credited to Granata, but that 27 of the 36 ineligible ballots were also credited to the latter.

In our opinion this character of evidence requires neither further comment, discussion nor analysis. It evinces a deliberate intention on the part of these respondents to prostitute the ballot and to frustrate the will of the voters of this precinct. Their guilt as charged in the sworn petition was established beyond a reasonable doubt and the judgment of the county court is affirmed.

*Affirmed.*

GRIDLEY, P. J., and SCANLAN, J., concur.